IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

LINWOOD R. NELSON,

    Plaintiff,

v.                          CIVIL NO.: WDQ-13-1817

UNITED STATES OF AMERICA,
*et al.*,

    Defendants.

\* \* \* \* \* \* \* \* \* \* \* \* \*

MEMORANDUM OPINION

Linwood R. Nelson sued the United States of America ("the Government"), Maxim Healthcare Services, Inc. ("Maxim"), and Advance Med LLC ("Advance Med"), (collectively "the Defendants"), for claims arising out of injuries he suffered while a patient at the Baltimore Veterans Administration Medical Center ("BVAMC"). Pending are the Government's motion to dismiss for lack of subject matter jurisdiction, Advance Med's motion to dismiss Count VI for failure to state a claim, and Maxim's motion to dismiss Count IV for failure to state a claim. For the following reasons, the Government's motion to dismiss will be granted in part and denied in part. Advance Med's

motion to dismiss Count VI will be granted. Maxim's motion to dismiss Count IV will also be granted.[1]

I. Background[2]

Nelson is a U.S. citizen and Army veteran living in Baltimore, Maryland. ECF No. 16 ¶ 3. The Government owns and operates BVAMC in Baltimore, Maryland. *Id.* ¶ 4. Maxim is a Maryland corporation that places healthcare personnel in temporary and permanent positions nationwide. *Id.* ¶ 5. Maxim employed David Kwiatkowski as a temporary radiology technician at the University of Pittsburgh Medical Center ("UPMC") from March 17, 2008 to May 8, 2008. *Id.* Advance Med is a Delaware limited liability company that also places healthcare personnel in temporary and permanent positions nationwide. *Id.* ¶ 6. Advance Med employed Kwiatkowski as a temporary radiology technician at BVAMC from May 22, 2008 to November 7, 2008. *Id.* The American Registry of Radiologic Technologists ("ARRT") is a national organization that tests and certifies healthcare technologists. *Id.* ¶ 7.

---

[1] Maxim's motion to dismiss Count IV of the original complaint (ECF No. 15) will be denied as moot.

[2] On a motion to dismiss, the well-pled allegations in the complaint are accepted as true. *Brockington v. Boykins*, 637 F.3d 503, 505 (4th Cir. 2011). The Court will consider the pleadings, matters of public record, and documents attached to the motions that are integral to the complaint and whose authenticity is not disputed. *See Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

In 2003, Kwiatkowski graduated from the William Beaumont Hospital School of Radiologic Technology in Michigan and obtained certification from the American Registry of Radiologic Technologists as a radiology technician.[3] ECF No. 16 ¶ 7. From August 2003 through August 2007, Kwiatkowski worked at four hospitals in Michigan. Id. ¶ 8. In 2005, he pled guilty to a charge of driving while intoxicated in Michigan. Id. He was sentenced to six months of probation and fined $1,075. Id. Kwiatkowski did not disclose his conviction on his annual ARRT renewal application. Id. In 2006, he was accused of stealing fentanyl and suspended from work at the University of Michigan Hospital. Id. Fentanyl is a schedule II narcotic under the Federal Controlled Substances Act. Id. Kwiatkowski quit his job before the hospital completed its investigation. Id.

In Fall 2007, Kwiatkowski began working for interstate medical staffing companies as a temporary employee placed in hospitals on short-term contracts. ECF No. 16 ¶ 9. The medical staffing companies were "obligated to conduct a background check." Id. On March 17, 2008, Maxim placed Kwiatkowski at UPMC on a contract scheduled to end on June 12, 2008. Id. While he was employed by Maxim, Kwiatkowski was a carrier of hepatitis C, a blood-borne pathogen that affects the liver. Id.

---

[3] The American Registry of Radiologic Technologists ("ARRT") is a national organization that tests and certifies healthcare technologists. Id. ¶ 7.

¶ 11. On May 8, 2008, a UPMC employee saw Kwiatkowski place a syringe from an operating room in his pants. *Id.* ¶ 13. UPMC personnel determined that a syringe containing fentanyl had been replaced with a syringe containing saline. *Id.* UPMC personnel confronted Kwiatkowski and found three empty fentanyl syringes on him, an empty morphine syringe in his locker, and fentanyl and opiates in his urine. *Id.* ¶ 14.

UPMC immediately terminated Kwiatkowski "for cause, reason -- misconduct." ECF No. 16 ¶ 14. UPMC Human Resources manager Jamey Jones notified Andrew Kuhn at Maxim, "reporting that Kwiatkowski's UPMC termination was related to narcotics, and expecting Maxim to report such information to ARRT." *Id.* Maxim's internal termination notice "stated that Kwiatkowski was able to work for Maxim again, and that Maxim was looking to place him again." *Id.* Maxim did not report Kwiatkowski's UPMC termination. *Id.* Two weeks later, Advance Med hired Kwiatkowski, and he began work on May 22, 2008 at BVAMC. *Id.* ¶ 17.

On May 27, 2008, Nelson underwent a percutaneous catheterization of his right ureter as an inpatient at BVAMC due to a kidney stone. ECF No. 16 ¶ 18. On September 8, 2008, Nelson underwent a thoracic CT scan with contrast as an outpatient at BVAMC. *Id.* Nelson received intravenous injections for both procedures in a room where Kwiatkowski was

4

working. *Id.* Before Nelson's procedures on May 27 and September 8, 2008, Kwiatkowski "stole a fentanyl-filled syringe intended for use on [Nelson], injected himself with the drug, refilled the syringe with dummy fluid (probably saline), and returned the contaminated needle for use on [Nelson] by authorized medical personnel." *Id.* ¶ 19.[4]

On November 7, 2008, Kwiatkowski left his job at BVAMC. ECF No. 16 ¶ 20. Over the next three and a half years, Kwiatkowski held temporary jobs at nine hospitals in six states. *Id.* On July 13, 2012, the New Hampshire Department of Health and Human Services announced an outbreak of hepatitis C, of the same strain as Kwiatkowski, among 32 patients who underwent procedures at Exeter Hospital's Cardiac Catheterization Laboratory, where Kwiatkowski worked as a scrub technician from April 2011 through May 2012. *Id.* ¶ 21. ARRT immediately terminated Kwiatkowski's certification as a healthcare technologist after receiving notice of his drug diversion. *Id.* ¶ 23.

On August 8, 2012, BVAMC officials contacted Nelson, and he took a blood test on August 10, 2012. ECF No. 16 ¶ 25. On August 13, 2012, BVAMC Chief of Staff Dorothy Snow, M.D., informed Nelson that he tested positive for hepatitis C acquired

---

[4] Since 1991, multiple instances of hepatitis C infections caused by drug diversion in hospitals have been reported in the U.S. *Id.* ¶ 12.

from Kwiatkowski. *Id.* On November 5, 2012, Nelson was informed that the link with Kwiatkowski was confirmed by molecular analysis by the Centers for Disease Control. *Id.* Nelson has suffered permanent injury, including "chronic and contagious hepatitis C infection which causes inflammation of the liver and leads to progressive liver dysfunction, liver cirrhosis, extreme physical pain and deterioration, and premature death." *Id.* ¶ 30. This has caused Nelson "devastating emotional distress and loss of enjoyment of life." *Id.*

On June 21, 2013, Nelson sued the Defendants for negligence and related claims. ECF No. 1. On July 24, 2013, Maxim moved to dismiss Count IV of the complaint. ECF No. 15. On July 31, 2013, Nelson filed an amended complaint.[5] On August 28, 2013, Maxim moved to dismiss Count IV of the amended complaint. ECF No. 22. On September 11, 2013, Nelson opposed Maxim's motion. ECF No. 27. On September 27, 2013, Advance Med answered Count V of the amended complaint, asserted a crossclaim against Maxim, and moved to dismiss Count VI. ECF Nos. 28, 29. On September

---

[5] In the amended complaint, Nelson asserts six causes of action:
- Medical Negligence Against the Government (Count I);
- Negligence Per Se Against the Government (Count II);
- Lack of Informed Consent Against the Government (Count III);
- Negligence Against Maxim (Count IV);
- Negligent Hiring Against Advance Med (Count V); and
- Vicarious Liability Against Advance Med (Count VI).

ECF No. 16 ¶¶ 31-58.

30, 2013, Maxim replied. ECF No. 30. On October 11, 2013, Nelson opposed Advance Med's motion to dismiss. ECF No. 32. On October 28, 2013, Advance Med replied. ECF No. 36. On December 13, 2013, the Government moved to dismiss for lack of subject matter jurisdiction. ECF No. 41. On December 27, 2013, Nelson opposed the Government's motion. ECF No. 42.

II. Analysis

    A.    Legal Standard

        1.    Failure to State a Claim

Under Fed. R. Civ. P. 12(b)(6), an action may be dismissed for failure to state a claim upon which relief can be granted. Rule 12(b)(6) tests the legal sufficiency of a complaint, but does not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).

The Court bears in mind that Rule 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." *Migdal v. Rowe Price-Fleming Int'l Inc.*, 248 F.3d 321, 325-26 (4th Cir. 2001). Although Rule 8's notice-pleading requirements are "not onerous," the plaintiff must allege facts that support each element of the claim advanced. *Bass v. E.I. Dupont de Nemours & Co.*, 324 F.3d 761, 764-65 (4th Cir. 2003). These facts must be sufficient to

"state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

This requires that the plaintiff do more than "plead[] facts that are 'merely consistent with a defendant's liability'"; the facts pled must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Twombly*, 550 U.S. at 557). The complaint must not only allege but also "show" that the plaintiff is entitled to relief. *Id.* at 679 (internal quotation marks omitted). "Whe[n] the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* (internal quotation marks and alteration omitted).

2. Subject Matter Jurisdiction

Under Fed. R. Civ. P. 12(b)(1), the Court must dismiss an action if it discovers it lacks subject matter jurisdiction. The plaintiff has the burden of proving the Court has jurisdiction, and the Court must make all reasonable inferences in the plaintiff's favor. *Khoury v. Meserve*, 268 F. Supp. 2d 600, 606 (D. Md. 2003), *aff'd*, 85 F. App'x 960 (4th Cir. 2004). The Court may "look beyond the pleadings" to decide whether it has subject matter jurisdiction, but it must presume that the factual allegations in the complaint are true. *Id.*

B.  The Government's Motion to Dismiss

The Government argues that the Court lacks subject matter jurisdiction because Kwiatkowski was an independent contractor and not a federal employee; thus the Government has not waived its sovereign immunity under the Federal Tort Claims Act ("FTCA").[6] See ECF No. 41 at 9. Nelson contends that jurisdiction is proper because he is asserting claims for the negligence of Government employees. See ECF No. 42-1 at 4.

The FTCA is a "limited waiver of the United States' sovereign immunity by authorizing damages actions for injuries caused by the tortious conduct of federal employees acting within the scope of their employment." Suter v. United States, 441 F.3d 306, 310 (4th Cir. 2006). In such cases, the United States is liable "in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674; see Suter, 441 F.3d at 310. The FTCA does not waive sovereign immunity for injuries resulting from the actions of independent contractors. See 28 U.S.C. § 2671; Robb v. United States, 80 F.3d 884, 887 (4th Cir. 1996). A case should be dismissed for lack of subject matter jurisdiction if the independent contractor exception precludes liability. See Williams v. United States, 50 F.3d 299, 304 (4th Cir. 1995). Whether an

---

[6] 28 U.S.C. §§ 1346(b), 2671-2680.

individual is a contractor or an employee is determined by federal law. *See id.* at 305.

Nelson does not dispute that Kwiatkowski was an employee of the contractor Advance Med. *See* ECF No. 42-1 at 1, 5. Instead, Nelson argues that the independent contractor exception does not preclude liability because he is alleging that the Government was negligent through its employees, and not that the Government is vicariously liable for the actions of Kwiatkowski. *Id.* at 2. In Count I, Nelson alleges that the Government was negligent for: (a) failing to conduct an adequate background check of Kwiatkowski; (b) failing to conduct adequate drug testing of personnel to determine that Kwiatkowski had injected himself with narcotics; (c) failing to take adequate security measures to prevent Kwiatkowski's unauthorized access to narcotics; (d) failing to adequately inventory and track the use of narcotics and equipment to uncover Kwiatkowski's actions; and (e) failing to adequately supervise or monitor Kwiatkowski. *See* ECF No. 16 ¶ 34. In Count II, Nelson alleges that the Government breached its "duty to comply with statutes and regulations applicable to safeguarding controlled substances" by failing to guard against the "tampering, theft, or diversion of controlled substances." *See* ECF No. 16 ¶¶ 37-38. In Count III, Nelson argues that the Government failed to obtain his informed consent because he was not informed of the material risks of his procedures, including

the risk of contracting hepatitis C from a healthcare worker. See ECF No. 16 ¶¶ 41-42.

To the extent that the allegations in Count I seek to impose liability for the negligent supervision or retention of Kwiatkowski, they are barred by the independent contractor exception. "An allegation of 'negligent supervision' will not render an otherwise unactionable claim actionable so long as the negligent supervision claim depends on activity of the supervised agent which is itself immune."[7] The Fourth Circuit also applied this rule to claims for negligent retention.[8] However, Nelson also alleges that the Government was negligent in failing to adequately inventory and safeguard narcotics, and in failing to obtain his informed consent for the procedures. See ECF No. 16 ¶¶ 34-43. Because these allegations address the negligence of Government employees and do not directly depend on the actions of an independent contractor, they are not barred by

---

[7] See Perkins v. United States, 55 F.3d 910, 916-17 (4th Cir. 1995) ("[I]f the United States is immune from suit for Agent Smyth's activities, it is also immune from suit for his negligent supervision because, without his underlying activities and violations, there would be no cause of action for negligent supervision at all."); see also Hodge v. United States, 443 F. Supp. 2d 795, 798 (E.D. Va. 2006) (negligent supervision claim "depends on" the actions of an independent contractor; thus the United States is similarly immune for the negligent supervision of the independent contractor).

[8] See Perkins, 55 F.3d at 917 (applying the same rule to a negligent retention claim because the proximate cause of the injury was the violations by the individual within an FTCA exception, not his retention by the employer).

the independent contractor exception to the FTCA. Accordingly, only the claims in Count I that allege negligence in the supervision and retention of Kwiatkowski will be dismissed under the independent contractor exception to the FTCA.[9]

C. Advance Med's Motion to Dismiss Count VI

Advance Med argues that it is not vicariously liable for Kwiatkowski's negligence in Count VI because he was acting outside the scope of his employment. See ECF No 29-1 at 4. Nelson contends that Kwiatkowski's actions were within the scope of his employment with Advance Med because they were foreseeable and incidental to his job duties. See ECF No. 32-1 at 3.

Under the doctrine of *respondeat superior* in Maryland, an employer may be vicariously liable for the torts of its employee when the employee was acting within the scope of employment. *See, e.g., Oaks v. Connors*, 660 A.2d 423, 426 (Md. 1995). Generally, the question of whether an employee's conduct is within the scope of employment is a question of fact for the jury. *See S. Mgmt. Corp. v. Taha*, 378 Md. 461, 481 n.6 (Md. 2003). "Nevertheless, where but one reasonable inference can be drawn from the undisputed material facts, the question is one of law for the court." *Henderson v. AT&T Info. Sys., Inc.*, 78 Md. App. 126, 139 (Md. Ct. Spec. App. 1989). An employee's acts are

---

[9] Nelson's allegations that the Government failed to "adequately supervise or monitor" Kwiatkowski are barred. See ECF No. 16 ¶ 34(e).

12

within the scope of his employment if they were done in furtherance of the employer's business, "and were such as may fairly be said to have been authorized by him."[10] An act is "authorized" if it is "incident to the performance of the duties entrusted to [the employee] by the [employer], even though in opposition to his express and positive orders."[11]

In determining whether an act is within the scope of employment, Maryland courts consider various factors, including whether the conduct (1) was of the kind the employee is hired to perform, (2) occurred during a period "not unreasonably disconnected from the authorized period of employment," (3) took place in "a locality not unreasonably distant from the authorized area," and (4) was "actuated at least in part by a purpose to serve the [employer]." *Sawyer*, 322 Md. at 256. Another important factor is whether the employee's actions were expectable or foreseeable. *Id.* "An act of a servant is not within the scope of employment if it is done with no intent to perform it as part of or incident to a service on account of

---

[10] *Sawyer v. Humphries*, 322 Md. 247, 255 (Md. 1991) (*quoting Hopkins Chem. Co. v. Read Drug & Chem. Co. of Balt. City*, 124 Md. 201, 214 (Md. 1914)).

[11] *Sawyer*, 322 Md. at 255 (internal citation and quotation marks omitted). *See also Houghton v. Forrest*, 989 A.2d 223, 231 (Md. 2010) (police officer's arrest of plaintiff was within the scope of his employment because it was "incident to his general authority as a police officer").

which he is employed." *Rusnack v. Giant Food, Inc.*, 26 Md. App. 250, 263 (Md. Ct. Spec. App. 1975).

Here, Nelson alleges that Kwiatkowski breached his duty of care by "allowing a needle contaminated with hepatitis C to be used" on Nelson. ECF No. 16 ¶ 58. Although Kwiatkowski acted during the authorized period of his employment and in an authorized area, his actions were not of the kind he was hired to perform, and they were not taken in furtherance of his employer's business. Exposing a patient to hepatitis C by stealing and using an injectable narcotic are not actions taken to serve an employer.[12] They are also not actions "incident" to his employment duties as a radiology technician; stealing narcotics for personal use and replacing the hepatitis C contaminated syringes for use on a patient are not activities commonly associated with the duties of a radiology technician.[13]

---

[12] *Compare Fidelity First Home Mortg. Co. v. Williams*, 208 Md. App. 180, 206-07 (Md. Ct. Spec. App. 2012) (employee's fraudulent foreclosure scheme was in the scope of his employment with a mortgage broker because it was actuated in part by the purpose to serve the employer by generating fees), *with Day v. DB Capital Group, LLC*, No. DKC-10-1658, 2011 WL 887554, at *21 (D. Md. 2011) (employees were not acting within their scope of employment because the plaintiff did not allege any facts indicating that the employees were motivated by a desire to benefit their employer).

[13] *Compare Market Tavern, Inc. v. Bowen*, 92 Md. App. 622, 655-56 (Md. Ct. Spec. App. 1992) (security guard's battery of a bar customer was in the scope of his employment when his duties included bodily restraining and removing customers), *with Jordan v. Western Distrib. Co.*, 135 F. App'x 582, 585-86 (4th Cir.

Accordingly, Kwiatkowski's actions were not within the scope of his employment, and Advance Med may not be held vicariously liable for his negligence. Advance Med's motion to dismiss Count VI will be granted.

D. Maxim's Motion to Dismiss Count IV

Maxim argues that Nelson has failed to allege that Maxim had a duty towards Nelson, or that its alleged breach of duty was the proximate cause of his injury. *See* ECF No. 22-1. Nelson contends that Maxim had a duty to "comply with the standards of care regarding patient safety at hospitals where its employees worked," which required Maxim to report Kwiatkowski's firing for drug diversion. *See* ECF No. 27-1 at 1.[14] Nelson asserts that Maxim violated this duty, and as a result, Kwiatkowski was hired by another staffing company two

---

2005) (security guard of truck transporting money did not act within his employment when he pointed a gun at a driver for cutting him off because his actions were not of the kind he was employed to perform and he was not attempting to advance his employer's interests).

[14] Nelson alleges that the applicable standard of care required Maxim to report Kwiatkowski to:
> ARRT, [the Maryland Department of Health and Mental Hygiene], the Maryland Board of Physicians, or another medical staffing company, or a medical licensing board, credentialing authority, state health department or other regulatory or law enforcement agency, or another person or organization in the healthcare industry likely to hire Kwiatkowski, be consulted by a prospective employer of Kwiatkowski, or be responsible for maintaining patient safety at hospitals where he would work.

ECF No. 16 ¶ 46.

15

weeks later where he infected Nelson with hepatitis C. *Id.* at 1-2.

To state a claim for negligence in Maryland, a plaintiff must show that (1) the defendant had a duty to the plaintiff, (2) the defendant breached the duty, (3) the plaintiff suffered actual loss, and (4) the loss was proximately caused by the breach. *See Rosenblatt v. Exxon Co., U.S.A.*, 642 A.2d 180, 188 (Md. 1994). Duty is "an obligation, to which the law will give recognition and effect, to conform to a particular standard of conduct toward another." *Dehn v. Edgecombe*, 384 Md. 606, 611 (Md. 2005) (*quoting Prosser and Keeton on the Law of Torts* § 53 (5th ed. 1984)). The existence of a legal duty is a question of law for the Court. *See Patton v. U.S. Rugby Football*, 381 Md. 627, 636 (Md. 2004). As a general rule, "there is no duty to control a third person's conduct so as to prevent personal harm to another, unless a 'special relationship' exists either between the actor and the third person or between the actor and the person injured." *Ashburn v. Anne Arundel Cnty.*, 306 Md. 617, 628 (Md. 1986). A special duty to protect a third person may be established: "(1) by statute or rule, (2) by contractual or other private relationship, or (3) indirectly or impliedly by virtue of the relationship between the tortfeasor and a third party." *Bobo v. State*, 346 Md. 706, 715 (Md. 1997).

Nelson does not argue that there is a statutory or contractual basis for imposing a duty on Maxim. Instead, Nelson contends that a special relationship exists. See ECF No. 27-1 at 5. Nelson maintains that it "can be easily inferred from the allegations of the Amended Complaint [that] the employer-employee relationship provides the basis for that duty, grounded in the context of the hospital setting and patient safety." Id. at 5. Nelson argues that the danger posed by Kwiatkowski was foreseeable, and that "[d]rug diversion is such a serious problem that Maxim bore an enhanced responsibility to patients Kwiatkowski would harm after his UPMC firing." Id. at 7, 9. Maxim counters that there is no special relationship between Nelson and Maxim. See ECF No. 30 at 4-5.

Here, Kwiatkowski was no longer an employee of Maxim when he caused injury to Nelson. See ECF No. 16 ¶ 16. Nelson has not provided a basis for his conclusion that a former employee-employer relationship between Maxim and Kwiatkowski imposes a duty on Maxim towards patients Kwiatkowski may harm in the future, or why Maxim had an "enhanced responsibility." See ECF No. 27-1 at 5. The amended complaint contains no allegations that Maxim had any contact with Nelson, or that any relationship existed between the two. See ECF No 16 ¶¶ 45-46. Nelson argues that it was foreseeable to Maxim that Kwiatkowski would harm patients in the future. See ECF No. 27-1 at 9. However,

17

foreseeability alone is insufficient to establish a special relationship and to impose duty of care. *See, e.g., Patton*, 381 Md. at 637; *Remsburg v. Montgomery*, 376 Md. 568, 583 (Md. 2003). Nelson provides no support for his argument that because Nelson was "harmed by the foreseeable misconduct of Maxim's ex-employee," a "sufficient relationship for imposing a duty on Maxim to take action to stop the employee's dangerous behavior" was established "in the healthcare context." *See* ECF No. 27-1 at 8.

Maryland courts have also been resistant to finding special relationships which would impose duties of care to indeterminate classes of people. *See Doe v. Pharmacia & Upjohn Co., Inc.*, 388 Md. 407, 420 (Md. 2005); *Dehn*, 384 Md. at 627. Nelson argues that here the duty would only extend to "a finite group consisting of patients injured by the drug-diverting employee Maxim knew of." *See* ECF No. 27-1. However, the rationale for imposing a duty of care to Nelson could apply to a larger group, including all future injured patients of any former employee who was fired for a drug-related incident. The group would also logically include any healthcare workers or hospital personnel injured by former employees who were terminated for any potentially harmful misconduct. This would create a "broad and

indeterminate duty of care" that would be unmanageable.[15] Maryland courts have narrowly construed the special relationship exception to the general rule against imposing a duty to a third party. See Patton, 381 Md. at 642-43. Because Nelson has not demonstrated the existence of a special relationship establishing Maxim's duty to Nelson, he has not stated a claim for negligence against Maxim. Accordingly, Maxim's motion to dismiss Count IV will be granted.

III. Conclusion

For the reasons stated above, the Government's motion to dismiss will be granted in part and denied in part. Advance Med's motion to dismiss Count VI will be granted. Maxim's motion to dismiss Count IV will also be granted.

3/11/14
Date

*/signature/*
William D. Quarles, Jr.
United States District Judge

---

[15] See Doe, 388 Md. at 421 (employer did not have special relationship with wife of an employee who contracted HIV through course of employment; would impose duty to any person who contracted HIV from any employee); Adams v. Owens-Illinois, 119 Md. App. 395 (1998) (employer did not owe duty of care to wife of employee when she contracted asbestosis from handling husband's clothes; would create duty to anyone in close contact with an employee).